The United States Court of Appeals for the Federal Circuit is now open and in session. Good morning everyone. The first argued case this morning is No. 16-2135, Global TelLink Corporation v. Securus Technologies, Inc., Mr. Ainsworth. Good morning, Your Honors. May it please the Court, my name is Paul Ainsworth of Stern, Kessler, Goldstein, and Fox. The term file has a well-understood meaning in the art. It means a named collection of data. The Board discarded this well-understood meaning in favor of a general-purpose dictionary definition that is inconsistent with a skilled artisan's understanding of the term file. But what difference would it have made in the outcome? The difference in the outcome, Your Honor, would have been petitioner raised an argument of anticipation only. And there was no dispute, there was no explicit disclosure in Ray, the anticipatory reference, of storage and data files. There was a disclosure of storage and data, or storage of data, but not of data files. Is this the contribution to the art these inventors made here? To the art of monitoring prisoner phone calls? The idea that the data is stored with a file name on it as opposed to just storing data in a database? That's the patentable advance over the prior art? Your Honor, the point is that's not the patentable advance over the prior art. We've not asserted that. The entire claim must be looked at for anticipation. And in this case, they decided to raise an anticipation argument, not an obviousness argument. So, yes, it was known that you could store data in files. That's a well-understood concept in the art. But their anticipatory reference did not disclose how the data was stored. And because there's many ways to store data besides in files, the burden was on the petitioner to demonstrate that the art anticipated, which they could not. Now, had they brought it as an obviousness case, we may be having a different conversation. But they chose to bring their case as anticipation. And they should be held to the strategy they had and not use claim construction to erase limitations from the claims that the court might find to be obvious. We need to construe the claim in light of the specification, right? Absolutely, Your Honor. And then the specification talks about how you can do real-time monitoring of phone conversations, live phone conversations. And so as the phone data gets sent over digitally to some storage device, somebody else remotely can then draw on that data as it's getting stored to listen to the phone call, right? That's how I understand the specification. And I guess my question is, under those circumstances, what's going on there, what's getting stored and what's getting retrieved is not truly a complete set of data with a name attached to it. The data set is not complete until the end of the phone call. And yet, nevertheless, this data that is getting stored is being accessed. And so that specification example seems to open up the idea that the claimed data is something broader than this complete, fixed, stored set of data that you're advancing. Your Honor, there are several embodiments described in the specification. And in one embodiment, you're right, the monitor can listen to real-time data conversations as the conversation is occurring. In other embodiments, they can occur after the conversation has already been recorded and stored on the storage device. What's happening in Claim 8 is it's requiring that the data be stored in data files. If you look at Claim 10, for example, the user has the option to selectively couple the streaming converter to the output of the analog-to-digital converter so that they can monitor the conversations in real time. So what Claim 8 contemplates is the data going to the storage device is for monitoring the stored data file conversations. Whereas you look at Claim 10, that is where it describes the device is selectively coupled to the output of the analog-to-digital converter. Was Claim 10 at issue in this IPR? No, Claim 10 and Claim 9 were not instituted upon, Your Honor. When I said, you know, what is the difference? You tell us you're complaining about the anticipation of the broader claim. There was, I gather, no proposal to amend or to restrict that broader claim. And perhaps no need to because the claims that cover the interpretation that you tell us is the correct one were not even at issue. Is that a correct statement of the situation? Well, Your Honor, those claims were not at issue because they couldn't, the anticipatory reference did not contain disclosures of 9 and 10. The construction is incorrect, though, because the term, there's no support in the record for the construction the board reached. A collection of data is inconsistent. That's the construction the board gave to file isn't supported in the record. The evidence of how a person is still in the argument would understand the term file. I guess why wouldn't it be if, based on the example I was giving before about the real-time monitoring and retrieval of data as it's flowing into the storage device and then pulling that out, what we're dealing with in those circumstances is an ongoing building set of data that's not really a complete set of data. Well, but that's not what, Claim 8 is drawn to, storing. I guess I'm responding to your point that there's no support in the specification for this kind of understanding, whereas it seems to me there is some support. Well, in the claims where the inventor wanted to refer to just what you're describing, Your Honor, they referred to conversation data. They didn't further restrict it to a file. For example, in Claim 1, there's also a storage device, but Claim 1, the storage device, is not restricted to devices that are strictly storing data files, whereas Claim 8 has that additional restriction in comparison to Claim 1. So I don't think we need to construe Claim 8 to cover all possible uses of the device when Claim 8 all is requiring, or what it does require, is that you are storing recorded conversation data files. And going back to, it was undisputed what the art-specific meaning of a file is, namely a complete named collection of information. What the Board did, and that's from the- Counsel, you said earlier, I just want to talk about this for a minute, you said earlier, and I think it's consistent with what you're addressing now, you said that there is no evidence in the record to support the PTAB's construction. But what about that dictionary definition that they relied on and, in fact, adopted? Your Honor, we would submit that isn't properly part of the record because that wasn't submitted by either party. The Board, sua sponte, selected a general purpose dictionary from 2016 and used that as a basis for their definition. In Phillips, this court said, when you have a choice between an art-specific meaning or a general purpose dictionary, the general purpose dictionary can't overcome the art-specific meaning. In this case, that art-specific meaning is evidenced by the Microsoft Computing Dictionary from 2001. And the testimony of Dr. Forby to explain, yes, this is how a person of skill in the art would understand the word file to mean. That testimony was never contradicted. The other side's expert offered no testimony as to what the meaning of file was to a person of already skill in the art. And so all you have on one side is the Computing Dictionary from Microsoft providing clear means well accepted by artisans. Dr. Forby says, in a moment, this is, in fact, how a skilled artisan would understand the word file. The Board then said, we're going to go to a general purpose dictionary that neither party cited in any briefs. Really, I don't understand what's wrong with that. Suppose it was just in the head of the experienced members of the particular board that you had as to what the general definition is. You're saying that you're not allowed to draw on general knowledge, whether it's something that you learned yourself through experience or a general dictionary. Was there no opportunity at all to contradict and say that dictionary is wrong? There was no opportunity, Your Honor. That general purpose dictionary was cited for the first time in the Board's decision. So we had no opportunity to explain why that was not a proper definition for file for purpose of this patent. But more importantly, the Board even adopted the definition from the general purpose dictionary. If you look at the definition, it's cited in the final decision at appendix 14. There's two definitions in the Merriam-Webster dictionary. One is a collection of related data records as for a computer. And the second one is a complete collection of data as text or a program treated by a computer as a unit, especially for purposes of input and output. So what the Board did is it took those two general definitions, broadened it even further to say, we think data file or a file is just any collection of data. And that isn't supported by even their own definition or their own citation to the Merriam-Webster dictionary. You talked about Phillips earlier, but I mean, this is, why doesn't BRI apply here? We're supposed to be looking at the broadest reasonable interpretation, right? Absolutely, Your Honor. But this court has also said that the principles of claim construction still apply in BRI. And the idea of what weight you give to extrinsic evidence has still been used by this court from Phillips in weighing the BRI. Sure, but it could have some effect as you're thinking about what is the broadest. Of course, it's got to be reasonable. It's got to be consistent with the spec. But it's also the broadest. It has to be the broadest. And also it has to be the broadest from the view of a person of ordinary skill in the art. Right, and so a person of ordinary skill in the art, are they going to look to Merriam-Webster's dictionary? Or are they going to look to a dictionary that's more common to their field in arriving with a definition or what the word means in this specification? And we have submitted, Your Honor, that in view of the fact that the only expert testimony on this, the only extrinsic evidence brought into the case by a party of it was this is the meaning of what a file is. And the board going to a general purpose dictionary to override the evidence of record, reach a broader meaning, is inconsistent with what these claims are talking about. Going back to the issue of anticipation for just a moment. So I guess your view is when RAE, the reference is storing the conversation data, it's not storing data files? RAE is silent, Your Honor, as to how data can be stored. And there was undisputed testimony in the record that data can be stored in files. It can be stored as just data blocks and then accessed through a database. In fact, the 732 patent describes you can have both a, you can store in files. It also refers to storing using a relational database arrangement. That is on column 7 at line 62 to 63. So we don't know how RAE stored the data. And it could have been a database, it could have been files. It doesn't say. And under anticipation, if it's not explicit, then it has to be inherent. And they haven't argued it was inherently disclosed by RAE. What the other side argued is a person's family would understand that I could, of course, store in files or store in a database. I have all these options available to me. That's not anticipation. That's obviousness. And this Court has said several times you can't use a skilled artisan's understanding to fill the gaps in an anticipatory reference. But the traditional mode of overcoming a reference that the office has always interpreted broadly would be to somehow adjust the claim to make clear that what's in the reference is not being covered. And I gather that this is accommodated in your dependent claims. Is that correct? I mean, we believe our dependent claims certainly stand on their own. Or the narrow claims. They certainly stand on their own and they're narrow. And I stand in my rebuttal time unless the Court has further questions. All right, we'll save you rebuttal time. Thank you. Mr. Bragalove. Thank you, Your Honor. May it please the Court. Appellant Globaltelling, whom I will refer to as GTL, challenges two issues that it claims were error in the claim construction of the board below. I'd actually like to address briefly the streaming converter claim that was not addressed yet in the questions of the panel. So GTL claims that streaming converter should have been construed to be a completely separate physical device from the analog to digital converter. First of all, that argument is a new argument. And it's barred by the doctrine of judicial estoppel because they advanced a claim construction argument specifically for the term streaming converter. And it contained none of the requirements of separateness or distinct physical entities. So we believe that's been waived and they're judicially estopped. Even if the Court were to consider it, though, it's actually contrary to the claim construction that they advocated and that was actually adopted, which referred to finding a streaming converter in hardware and or software. And additionally, in any event, it's contrary to the actual specification, which has no requirement of separate and distinct components, and in grafting an additional requirement. The figures show the streaming converter separate, as a separate box in their flow chart from the analog to digital converter, right? Well, yes and no, Your Honor. There's that embodiment that's also disclosed, but as the Board correctly found, it's described as IAD 30. And specifically, in IAD 30, there is no location that's described for the streaming converter. And the Board pointed that out, that the integrated access device, and this is from the Appendix 24 in the final written decision, citing the 732 patent at column 5, lines 30 through 43 and 48 through 50. There is no location ascribed for the integrated access device 30. So, in fact, the integrated access device could have both the streaming converter and the analog to digital converter in the same device. There is literally no special requirement that they be separate. But this was a claim construction point that was advanced by GTL. They advanced this point, and nowhere did they ever argue that, as a matter of claim construction, that these had to be separate. This Court has repeatedly said that you cannot articulate a claim construction position below. And this claim construction came out in the initial… …doesn't disclose a streaming converter to the Board? They argued that the prior art reference could not have them in the same device. That's correct. However, they articulated this on appeal here as a claim construction issue. That argument was never made. They're trying to transform this into a claim construction issue in order to get out of the deferential standard that would be applied to the findings of fact and the findings of the Board… If it is, in all fairness, a claim construction issue, that's the way we need to look at it. Well, respectfully, Your Honor, they can't propose that the correct definition of streaming converter contains no separateness requirement and repeatedly make that argument to the Board and then come to this Court and argue that the Board got it wrong because it adopted their very construction. The only difference between the construction that they articulated below for streaming converter and what was adopted was the absence of the compression requirement. No, we understand your waiver argument. Are you done with the point you want to make about why you believe the reference does teach a streaming converter? Do you have something else to add to that? The Board did find that not only does the IAD show that in one device, but the construction itself that was adopted by the Board and was advocated by GTL calls for this to be in hardware and or software. There is no requirement literally in the claim that this be in hardware of any kind, much less that it be in a separate physical component, which is the argument that GTL now advances to the Board. If this can be, in fact, realized in software, there cannot be a separate physical requirement. This is merely a narrowing construction. It's certainly not the broadest reasonable construction. It's a narrowing construction that's being applied by GTL after the fact. The Board was not permitted to address this, but they did find that Ray disclosed a streaming converter and an analog-to-digital converter and that that was part of the voice-over IP gateway, the VoIP gateway below. And in making that finding, they recognized that a single device could have this, both devices there, and that's clearly disclosed. So we don't think there's any error at all in the claim construction point that these must be separate. Can you get to the data files question now? Absolutely, Your Honor. So with respect to the construction of data files, several points. First of all, the construction of file was actually never advanced in any of the briefs as a claim construction issue. And you'll note that the Board also made this finding. When they actually noted that— The Board tried to do a claim construction on the word file, did it not? They did, and they said neither— So can we just get to the merits of what's the right understanding of the word file, data file? Absolutely, Your Honor. I think at this point, though, I would suggest this goes to the question of fairness in terms of whether or not GTL had an opportunity to address the dictionary definitions that were relied upon by the Board. Well, that's their argument. They say that neither side raised the dictionary definition. It's not fair. And, Your Honor, the first time they brought this up as a claim construction issue was at the hearing, at trial. That's undisputed. That was in the record, and that's— No, the point they're making is the Board undertook the claim construction of data files, and then they're complaining that the Board went to a shelf and found a dictionary and then found a definition it liked and used it without either side having ever seen that definition or proposed that definition or had a chance to respond to that definition. So that is their complaint. And, yes, Your Honor, they clearly had an opportunity to file a motion for reconsideration if they felt agreed by not having an opportunity to respond. I would suggest, though, that the fault actually lies with GTL because they raised this at the outset at the first time at the hearing. I think it's commendable that the Board took it upon themselves at that point to provide a claim construction. But if they're arguing that they didn't have appropriate time to respond to arguments from the Board, it should have been raised earlier in the process where it would have been appropriate. But in any event, the Board did find that not only was it supported by the dictionary definition, but it was actually supported by the proposal that was made by GTL itself. So in that particular argument, the court there found that under the definition of file proposed by the patent owner, a file can be simply a set of data used by a program. I'm sorry, but what page are you looking at for saying that the Board was relying on it? So that's appendix page 13. Okay, thank you. And they reference that and they actually credit the reply page 7. The Board credits in their final written decision the argument that we made that this was actually consistent with the patent owner's response. And the patent owner in their response argued that a file is a complete name collection of information, such as a program, a set of data used by a program, or a user-created document. So a set of data used by a program, as the Board found, is virtually indistinguishable from their argument of a collection of data. How do you deal with that sentence that I think is clearly wrong in the Board's opinion, that's in the very part of the opinion you're relying on, where they say, patent owner does not inform us, nor can we find language in the claim itself, requiring that the data be stored in a particular manner, such as a data block, a disk, or a file. I mean, the claim itself says it's stored in a file. It says file, Your Honor, but I think what's important here is GTL is arguing now that there must be a different construction given to these two terms, simply because one uses file and one doesn't. But that's actually contrary to how this Court has applied the doctrine of claim differentiation. When claim differentiation arises in the context of two independent claims… I don't think that's answering my question, which was, would you think the Board was correct or not correct in this particular sentence that it has, where it says the patent owner does not inform us in claim language that the claim doesn't say whether the data has to be stored in a particular manner, such as in a file? So the way I read that, Your Honor, is the Board was not saying that it doesn't use the word file. Clearly, if it had said that, I think that's incorrect. Instead, what it's saying is it doesn't require that it be stored in some particular format. It's not requiring that it be stored in a database. They actually cite to the 732 patent, and they point out that where it references storage, it actually says that it may be stored in a relational database. And they point out in their decision that the indication of a may there means that it's not being required to be stored as data blocks or as unnamed files. So the fact that the specification itself does not call for it to be stored in any particular manner, and as Your Honor referenced, that's not the point of novelty here, storing data with a file name. Moreover, to Judge Newman's question, what would it matter here? The array reference does specifically incorporate, by reference, the Kett patent. And it refers to the Kett patent and the fact that the Kett patent is directed to data storage. And again, this is an argument that we made. It's in the appendix at 10.15 through 10.16 that it's actually specifically incorporated by reference. And Figure 5, Step 112 of Kett refers to write conversation data to file. Figure 6, Step 122, store data files of conversation data in mass storage. If this is the disclosure that is specifically referenced in Ray, it's pointing out that it's well known in the art that audio recordings may be stored in data files. And it refers to Keck specifically calling out that point. In fact, the name of Keck relates to telephone apparatus with recording of phone conversations on massive storage. So it's directed specifically to storage of data in file format. So the fact that Ray discloses that a call may be recorded in analog format, but preferred embodiments of that invention call for the content to be also recorded in digital format to readily facilitate retrieval and or playback via digital means, such as upon a workstation 142. The board said that is disclosing the concept of storing it in a retrievable file. You do not need to use the actual word. Where did the board say that? They rely on that, Your Honor. They actually say secure. It's demonstrated that Ray discloses the data. Can you tell me the page you're talking about? Yes, Your Honor, I'm referring to Appendix 307, which is where this is Ray. But I'm talking about where in the board decision did it cite to a passage of Ray that, in your view, incorporates Keck. Understood, Your Honor. I can't put my fingers on it right now, but I am confident. You can continue your colleagues looking as well. Okay, thank you, Your Honor. So, in short, Ray does actually incorporate Keck by reference, which calls for the storage of data files, and it also references the fact that data is stored in a digital format. That was referenced by the board in showing that it meets this element. So let me see if I understand your argument. You're telling us that what the board has done here is adopted your claim construction and then found that Ray teaches that construction of that claim limitation. In addition, the board found in Ray, Ray slash Keck, a teaching that meets the patent owner's proposed claim construction. Is that what you're saying? Essentially. I only saw the board do the first thing. I didn't see the board do the second thing. So essentially, Your Honor, the patent owner did not provide a set of both parties argued this point at the hearing. We did not submit a written claim construction. I'm just trying to figure out what the board did in the four corners of the board decision. Yes, Your Honor. You're telling me that the board basically made alternative holdings, on why the Ray reference teaches this particular claim limitation under any understanding of that claim limitation. I missed that point. I only saw it during the finding that Ray teaches that claim limitation under one particular understanding of that claim, i.e. your preferred understanding of that claim. Yes, Your Honor. OK, let's hear the rebuttal. And if you find the site, you can tell us. Thank you, Your Honor. I appreciate that. Mr. Ainsworth. Thank you, Your Honor. First, I want to address this point about Keck. The final written decision of the board never referenced Keck once and references portions of Ray. The next question is, those portions of Ray that it relied upon, were those portions of Ray specifically referencing and relying upon and incorporating Keck? Your Honor, we said they were not. The only place Keck is referenced in the Ray reference is on Column 1, where several references are incorporated by reference as prior art. And then this is the background section of Ray. And on Column 1 and Column 2, it proceeds to criticize the prior, explaining why, of course, they think Ray is an improvement over the art. There's no later incorporated discussion of Keck anywhere in the Ray reference. In particular, there's no discussion in Ray where they say, you can use the system of our system and incorporate the storage system of Keck with our two systems. What they're trying to do here by taking Keck and Ray is really obvious. They're trying to combine two separate references together because one was referenced in the other. And this anticipation requires the claim that the prior disclosed the invention as arranged in the claims. And here, what they're doing, they're saying, okay, Keck mentions storage devices, storing files, and because that's in the background section to our invention, to our reference, we can rely upon anything in Keck to support their anticipation argument. And I don't think this court has ever allowed incorporation by reference to be used so broadly here. And the board certainly didn't credit Keck. They never found Keck to have been incorporated by reference or to what extent it was incorporated by reference into the Ray reference. Counsel indicated during his argument that we waived the argument that the streaming converter and the analog-to-digital converter are separate elements. We disagree. Referring the court to Appendix 256 to 259, this is Pat Hunter's response, pages 16 and 19. It's in our discussion on the streaming converter, but we certainly made the argument that the streaming converter and the analog-to-digital converter were separate elements, and we cited several cases. And you argued that as a matter of claim construction, not as a matter of fact? We argued as a matter of claim construction. That's correct, Your Honor. It wasn't in our section labeled claim construction. It was in the section addressing Ray specifically, but we were making the point specifically that when you have separate claim elements, they should be construed to require separate structures in the prior art. So, no, we didn't assert a claim construction that said this must be separate from this, but we certainly made that argument when we explained why there didn't have an anticipation case because you could have construed the claims to have one structure cover both elements. So, it was your position that because there were two separate elements in the claim, that that's why the reference wasn't satisfying the claim? That's correct, Your Honor. Okay. Because we think under Becton-Dixon v. Tyco, when there's separate elements, the presumption is there should be separate structures in the art. And here what the board said is the same structure was an analog-to-digital converter because the output of that converter was data streams, that that covered both limitations. So, it was both at the same time converted analog-to-digital. Is there anything else? I mean, I know the claim talks about, you know, first location, second location, third location. I don't see anything in those location limitations that would require those two elements to be in different locations. Do you agree with that? I agree the claim does not explicitly recite that they must be in separate locations, Your Honor. But if you look to Claims 10, for example, where it says that the streaming converter is selectively coupled to the analog-to-digital converter, it doesn't make a lot of sense to have the same device that would be selectively coupled back to itself. So, when you read all the claims, understand what's meant by Claim 8, we think that supports the presumption that they are separate elements. And in our specification, when we talked about the streaming converter, we never said the streaming converter and the analog-to-digital converter can be combined, can be met by the same structure. And this Court has said that where the claims don't indicate the two structures, the two limitations can be met by the same structure, and where the specification does not indicate that the two limitations can be met by the same structure, that's where this principle of separate elements under Becton-Dixon v. Tyco comes into play. The two cases they cite, PAL and retractable technology, in both instances, the specification said these two structures can also be combined. And so there was support in the specification to read them to cover one structure covering both limitations. Okay, now we're running over. Would you take just a minute if you wish to add any rebuttal that you want in connection with the point that you raised on your argument in chief? Thank you, Your Honor. I just wanted to come back to the question that Your Honor had about House Claim 9 to 10. You asked whether that was narrowing aid such that we didn't need to look to claim it because of Claim 9 to 10. The point of Claim 9 to 10 didn't address the issue of the file. And Claim 9 to 10 are narrower but not in a sense related to how the data is stored in the file. So we don't think that that amendment comes into play here. And that reinforces the question of when you tell us that it was just construed too broadly, why not simply amend Claim 1 to the definition that you say is appropriate? Your Honor, you raise a good question. Of course, intervening rights come into play whenever you amend claims. And we believe that our construction on the file. But if you're not entitled to the breadth, then intervening rights are appropriate, aren't they? Understood, Your Honor. If you have no further questions. All right. This case is taken under submission. I'm going to proceed to the second case. Did you find the citation? Yes, please come forward and tell us on the microphone. Your Honor, without arguing this, I would just give us the site that we were looking for. Appendix 20 under data files. Additionally, petitioner argues that data file limitation is met by the disclosure in Wray. And then it goes on. Then following that, on 21, there's also a statement in the final written decision. Petitioner counters that Wray satisfies the data file limitation because. Does that answer your question? What in Wray that cites Keck did the board rely on? The board did not cite to Wray's incorporation of Keck at all. Okay, that's all I need to know. Thank you. Okay, thank you.